Case 7:18-cr-00625-KMK   Document 206   Filed 11/10/22   Page 1 of 19
Case 7:18-cr-00625-KMK   Document 207   Filed 11/14/22   Page 1 of 5

MEMO ENDORSED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA –)

V.                                                          18 Cr. 625 (KMK)

                                                            Honorable Judge Karas

ANDREA GROSSMAN, Defendant)

-------------------------------------------------

## Motion for Early Termination of Supervised Release

Defendant, Andrea Grossman, hereby moves the Court to terminate her term of supervised release pursuant to 18 U.S.C. § 3583(e)(1). The 1-year term of supervised release began on August 26, 2022. While Mrs. Grossman has only completed some of her supervisory term, she is due FSA and good time credits from March 15 to the present, which would bring her to half of her supervised release time. In addition, conditions for a diabetic at Danbury were inhumane and cruel and release from supervised release would be an appropriate remedy. Mrs. Grossman is being supervised in the Southern District of New York where she lives with her husband. The probation officer has indicated to Mrs. Grossman that she is in full compliance in all areas of supervision, including making monthly payments on her restitution obligation.

FSA credits have not been applied properly. When the Bureau of prisons did not configure the credits properly, the Bureau hired a third party to create a computer model. This model does not seem to work properly. Under the FSA Act, credits are to be given when the Bureau fails to give programs (especially for people who are in the halfway house or in home confinement). Credits are also to be given for those on wait lists. The counselors often do not track these credits or account for them. Ms. Grossman is due 60-90 days minimum for unaccounted FSA credits and now that she is on probation the Bureau personal will not tell her who can correct these errors.

Ms. Grossman's harsh conditions during her incarceration were the result of unnecessary lockdowns and quarantines. The lack of wholesome food and fresh air exacerbated the situation. As a diabetic, Ms. Grossman returned home in much worse condition mentally and physically than when she arrived. At 63 years old, Mrs. Grossman was vaccinated and boostered. She has, and had, a compromised immune system (diabetes, high blood pressure and hypothyroidism). Her blood pressure increased since her self-surrender date of November 19, 2021. On December 14, 2021 she was prescribed a high blood pressure medication (hydrochlorothiazide) in addition to lisinopril. This code red situation she endured was frightening and dangerous for a person over 60.

From December 27, 2021 through January 21, 2022, all those not suffering from covid (about 28 women) were in covid isolation. Those with covid had the main building. The quarters that 14 of the 28 who tested negative for covid were living in, had no shower, no running hot water and no phone to call families to tell them

what was going on. They had to walk down to the FCI medium prison visiting room in the freezing cold weather to shower and eventually to be able to make a phone call. Later, they hooked up one phone for all 28 women to use. The showers during this period were restricted. She had to walk down the hill (and back) without a coat in the freezing wintertime to take a warm shower. The visiting room had no heat, and the meals were cold. There was no microwave to warm up cold meals that were served for most of the 21 days.

The non-covid positive people including Mrs. Grossman had meals of donuts and food that was not healthy for diabetics. As a result, Mrs. Grossman's diabetes worsened. . At all times, the food line did not take diabetics into consideration at all. Sugar is added to most items put on your tray. There was never a diabetic alternative. When she mentioned that to medical, the physician assistant clearly said, "Yes, that is a problem." At every meal, desserts were offered such as cookies, cakes etc., -never a diabetic option either.

Clearly, if Ms. Grossman's papers for home confinement had been timely filed, she could have been warm, fed, and safe from harm on home confinement. Mrs. Grossman did not benefit from the First Step Act as she should have because no one was processing the paperwork and those working from home were not prioritizing releases. Therefore, she was in prison at least three months longer than she had been led to believe (from the staff).

Ms. Grossman's A1c was 10.1 recently, and it had been normally under 7. The reason is stress and non- diabetic-friendly, unhealthy, cold food served without a

microwave to heat up the cold "hot" oatmeal. Her other meals were donuts or bananas- not diabetic friendly. Her breakfast was around 9:30, her dinner was at 4, and no other meal was provided and there was no commissary (other than hygiene products). She was stressed and hungry, and she suffered from dizzy spells. She was served instant oatmeal but no hot water. With limited commissary, she often went to bed hungry. (Sometimes no food from 4pm to 10 am). Her medical records showed a diabetes negative change from 6.7 to 10.1. On January 6, 2022 she was diagnosed with dehydration. Due to covid-19, there was no visitation.

From January 31, 2022, to February 8, 2022, the camp was once again locked down for 24 hours a day because of activity by an M13 gang IN TEXAS! This punishment for Mrs. Grossman was beyond comprehension. She had asked for an updated release date, but some of her FSA credits were never accounted for nor credited. No FSA credits were offered for the 28 days in the quarantine/isolation.

On August 1, 2019, Mrs. Grossman, the clinic's salaried business manager and bookkeeper, pleaded guilty to one count of conspiracy to commit health-care fraud, for which she received a year and a day in custody. She self-surrendered and served her prison time without incident. Her home confinement and supervision have likewise been without any incident. Mrs. Grossman returned to her home and family life. She is the mother of one child and has grandchildren. Mrs. Grossman satisfies all the factors set forth for early termination. She has completed all his terms of supervision and has no need for programming or treatment. She has made progressive strides towards payment of his restitution obligation and will continue to do so even after supervision is completed. She had minimal special conditions and has fully complied with all of them. Notably, she

has no conditions requiring any sort of programming or counseling, and none has been needed during the course of her home confinement and supervision.

Mrs. Grossman is not in need of the guidance, training or other assistance provided by probation; she has diligently complied with the terms and conditions of the sentence of probation; and the termination of the sentence of probation is not adverse to the protection of the public. Mrs. Grossman has completed every condition asked of her and has gone beyond the requirements of her supervision. She has fully reintegrated into society and is a valued community member, family member, and citizen. She has achieved stable community reintegration in terms of housing, family, and economics. She is in full compliance with all terms of supervision. She had no aggravated role in the offense, no violence or weapons in this offense, and is not using controlled substances. She has no psychiatric issues. She enjoys the support of her community. She is an ideal candidate for early termination of supervised release based on every factor the Court must consider. Given Mrs. Grossman's commendable reentry into the community and performance on supervised release, she respectfully requests that the Court order that credits for FSA/good time be applied and/or her term of supervision be terminated under 18 U.S.C. § 3583(e).

Respectfully submitted this 10th day of October, 2022.

Andrea Grossman, pro se

*[Handwritten annotation:]* Motion for early termination of supervised release is denied. While Covid may have increased the burden of prison, that does not justify early termination of supervised release. Also, that Ms. Grossman thinks she is not in need of guidance hardly is dispositive. In short, there are no exceptional circumstances that justify termination of supervised release after only 3 months.

So Ordered
KMK
11/14/22